S. G. ARMSTRONG, Appellee, v. LOWNSBERY, SIMMONS & COM-
PANY et al., Appellants.

**BROKERS:** Employment—Exclusive Contract—Revocation. A pow-
er under a contract, where brokers were given the exclusive
right to sell land, were to have one third of the profits of the
sale, and were required to use their best efforts to find a pur-

chaser, could be revoked, after a reasonable time had expired for the exercise of the right; and the granting of such power did not deprive the owner of the right to sell the land himself.

CONTRACTS: Rescission—Laches of Brokers. Evidence reviewed, 2 in an action to cancel a contract giving brokers the exclusive right to sell land, and *held* that the brokers were guilty of laches in not making substantial efforts for more than nine years to procure a purchaser, and that the contract should be canceled.

LIMITATION OF ACTIONS: Computation of Period—Misrepresen- 3 tations as to Option Price. A claim for the recovery of money received by brokers, by reason of their misrepresentations as to the option price, when the option price was $1 per acre less, was a claim based on tort, and not one "heretofore cognizable in equity," although the action was one originally commenced in equity; and therefore the claim, not having been brought until nine years after the accrual of the cause of action, was barred by the statute of limitations.

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

SEPTEMBER 16, 1919.

REHEARING DENIED DECEMBER 19, 1919.

ACTION to cancel a certain contract. Opinion states the facts. Decree for the plaintiff as prayed in the court from which the appeal is taken. Defendants appeal.— *Modified and affirmed.*

*Trewin, Simmons & Trewin,* for appellants.

*Warren Harman* and *Redmond & Stewart,* for appellee.

GAYNOR, J.—This action is in equity, and the only relief which the plaintiff sought in the bringing of the action was the cancellation of the following contract:

"Cedar Rapids, Iowa, March 22, 1906.
"It is agreed by the undersigned as follows:

"Lownsbery, Simmons & Company agree to secure a contract running to Samuel G. Armstrong from the own-

ers of a tract of about 2,200 acres in Townships Fifty-eight and Fifty-nine, Range Twenty-two, in Itasca County, Minnesota (which said Lownsbery, Simmons & Company have had cruised as to the timber on said tract and the report and estimate on same has been furnished to said Armstrong), at $4.50 per acre net to owners on the following terms: $1.00 per acre cash and the balance in five equal annual installments, bearing interest at the rate of six per cent per annum and *agree to use their best efforts to sell said land and timber as soon as possible,* considering best price and terms obtainable. Said Lownsbery, Simmons & Company agree to *attend efficiently* to all details of purchase and *sale* including abstract and title matters. In consideration of which said Armstrong agrees to furnish the money necessary to finance the entire transaction, and to execute contract of purchase, and contracts and deeds necessary to accomplish the sale of said tract; which sale shall be exclusively in the hands of said Lownsbery, Simmons & Company.

"It is mutually agreed that from proceeds of sale of said tract said Armstrong shall first be reimbursed for payments made on account of said purchase, including principal, six per cent interest and taxes and said Lownsbery, Simmons & Company shall be reimbursed for expenses of cruising said land and the cash expenses paid out in connection with the sale of said tract; and of the balance of the proceeds of sale said Armstrong shall receive one third and said Lownsbery, Simmons & Company shall receive two thirds."

The petition was filed on the 22d day of October, 1915. The prayer in the original petition was that the defendants be adjudged to have abandoned whatever right they had in said contract; that the contract be canceled and held for naught.

The grounds upon which the plaintiff sought the can-

cellation in the original petition are: That the defendant named in said contract was a copartnership, and was dissolved by mutual consent several years ago, and one of the members of the firm has moved to California, and abandoned the contract, in so far as attempting to carry out the obligations of said firm, as expressed in the contract, is concerned. The other member of the firm, while remaining and residing in Iowa, and maintaining an office in the city of Cedar Rapids, has not been engaged in the sale of Minnesota land in Itasca County, nor has he made any effort to make sale of this land or timber thereon, nor has he done anything in the way of carrying out the obligations of the firm, as expressed in said contract. The plaintiff alleges the fact to be that the defendant firm, during the time between the execution of the contract and the dissolution of the firm, sold thousands of acres of land in the vicinity of this land, and could have sold this land and timber many times, had they made an effort to do so; that more than nine years have elapsed since the defendant firm undertook to perform the contract hereinbefore set out; that defendants have been granted more than a reasonable time to effect a sale; that the amount necessary to be realized to reimburse plaintiff far exceeds the value of the land; that the defendants never invested anything in said land, and have no interest therein.

On the 25th day of April, 1916, the plaintiff filed an amendment to his petition, in which he alleges that the defendants misrepresented the price at which they had an option; that, in fact, defendants had an option on said land for $3.50 per acre, instead of $4.50, as mentioned in the contract; that the defendants had an agreement secretly and unknown to the plaintiff to buy the land at $3.50 per acre; that, if plaintiff had known that the defendants had an option on said land for $3.50, instead of $4.50, he would not have entered into the contract hereinbefore set out.

On this, plaintiff asks cancellation and judgment for the difference.

Defendants tendered issue with the plaintiff on, the matters alleged, and the cause was tried to the court, and a decree entered canceling the contract and giving judgment against the defendants for the sum of $2,236.00, with interest at six per cent from March 22, 1916. From this the defendants appeal.

It appears that, at the time this contract was made, the plaintiff and the defendants resided in the same city, and had known each other for several years. The defendant Lownsbery had been associated in business with the plaintiff. They were members of the same church. Plaintiff had confidence in the defendants, and relied upon their statements. Plaintiff had never visited the land, and knew nothing of its value.

The land covered by the contract belonged to a large tract of land owned by parties residing in Minnesota. The defendants had about 20,000 acres of this land cruised, and had obtained from the owner an option to purchase the land referred to in the contract at $3.50 an acre, the option to run 60 days from the 24th day of November, 1905. It had been continued, we take it, from time to time; for it appears that the option had not expired, but was about to expire at the time this contract was made. A short time before the making of the contract in question, A. W. Lownsbery, one of the defendants, came to plaintiff's place of business, and told him that they had an option on 2,236 acres of land in Itasca County, Minnesota, and the option was about to expire; that, if they had a little more time, they could effect a sale of the land and make a handsome profit, and that they would be willing to give one third of the profit if plaintiff would finance the entire transaction by paying for them the option price, out of which no commission would be asked by defendants' firm; and that the

only profit they would get would be out of the land when it was resold. Lownsbery told the plaintiff that the land on which they had an option was heavily timbered land; that the defendants could not spare the funds to take the land over at the time. With the matter standing thus before the mind of the plaintiff, the contract in question was made. The defendants immediately notified the owners of the land that they elected to avail themselves of the option, in the following words:

"We hereby signify our intention to purchase all the land embraced in a certain option contract dated Nov. 24, 1905, except the lands in Section 17–59–22, on the terms *specified in the option contract.*"

Thereupon, the defendants caused to be executed, and delivered to the plaintiff, contracts for a deed dated November 24, 1905, one with the Felthous Land Company, covering 400 acres of the land in question, at a total consideration of $1,800, to be paid as follows: $400 cash, and the balance in five equal annual installments of $280 each, with interest payable from February 20, 1906, at 6 per cent, and one with the Minnesota Land Corporation, covering 1,836.19 acres of the land in question, for the total consideration of $8,262.85, to be paid as follows: $1,836.19 cash, and the balance in five equal annual installments of $1,285.33 each, with interest payable from February 20, 1906, at 6 per cent, which sums were paid by plaintiff as specified in the contract. On October 25, 1909, the Felthous Land Company, in fulfillment of the contract, executed a warranty deed, conveying the 400 acres of land in question to the plaintiff; and, on the same date, the Minnesota Land Company, in fulfillment of its contract, executed a warranty deed to the plaintiff, conveying the land described in its contract.

It will be noted that, while defendants had an option to purchase this land at $3.50 per acre, and elected to ac-

cept the land under the option, they caused the contracts to be made to the plaintiff at $4.50 per acre, and plaintiff paid the owners $4.50 an acre. Defendants admitted in their answer that, out of the sum paid by the plaintiff to the owners, the defendants received, in cash and credits, the sum of $1.00 per acre. Though it does not affirmatively appear how they received this $1.00 per acre, we take it that they received it from the owners, out of the money paid by the plaintiff to them under this contract. Defendant Lownsbery says:

"I didn't explain to Mr. Armstrong that we had this option at $3.50 per acre, because I didn't consider it any of his affairs."

It will be noted, from an examination of the contract, that the defendants agreed to secure contracts running to the plaintiff from the owners of the land in question, at $4.50 an acre *net to the owners*. The fact is that the owners received $3.50 an acre. It appears that, in consideration of plaintiff's purchase, defendants undertook to use their best efforts to sell the land and timber as soon as possible, considering best price and terms obtainable, and that the sale should be exclusively in the hands of the defendants.

It is apparent that, while the defendants secured the contracts for the plaintiff, as required by the contract in question, at $4.50 an acre, this sum was not net to the owners. $3.50 went to the owners, and $1.00 an acre to these defendants. Plaintiff, however, in ignorance of the fact that only $3.50 of his money was paid net to the owners, took the contracts and the deeds. It is apparent, therefore, that the defendants have invested nothing in the land, but have received, out of the amount invested by the plaintiff in the land, more than $2,200, which they have retained and still retain, the receipt of which they concealed from the plaintiff, until discovery was made upon the trial. Upon discovering the fact that the defendants had received back

from the purchasers this sum of money from the amount paid to the purchasers, an amendment was filed, asking judgment against the defendants for that amount. So, at the time of the submission of the case, the plaintiff was praying for a cancellation of the contract, and that he be reimbursed, to the amount of this $2,200 odd, which he had been fraudulently induced to pay, not for the land, but for the use and benefit of these defendants. The only interest which these defendants have, under the contract, is in the profits, if any, when the land is sold. The plaintiff, under this record, is the owner of this land. He purchased it directly from the owners. He purchased it through these defendants, construing the contract in the light of what was told plaintiff before the contract was made: to wit, that defendants had an option on the land; that the option was about to expire; that they could not hold the land for want of funds; that, if plaintiff would take the land at the option price, they would agree to sell the land for him, and divide the profits as provided in the contract. The contention that the defendants sold this land to the plaintiff at $4.50 per acre is without support. The understanding between the parties before the contract was made, and the understanding of plaintiff at the time the contract was made, was that he was to have the land from the owners at the price fixed in defendants' option. While defendants did not directly state to the plaintiff what the option called for per acre, they gave him distinctly to understand that he was to have it at the option price, and that $4.50 per acre was the option price. The contract says, "$4.50 per acre net to the owner." Under the record here, it is apparent that defendants never had any interest in the land, after they had procured the contracts under which the deeds were made to the plaintiff, except the exclusive right to resell the land and receive a portion of the

1. Brokers: employment: exclusive contract: revocation.

profits arising from the sale. They were the agents of the plaintiff for the sale, and nothing more. We have no doubt that this agreement to sell was made to induce the purchase. They had no interest in the land itself, because they retained none. The only interest they had was in the profits that would arise from the exercise of the power granted them as agents to sell—a power that they never attempted to exercise. As agents to sell, their power was revocable certainly after a reasonable time had expired for the exercise of the right granted. The granting of exclusive authority to these defendants to sell did not take from the plaintiff the right inherent in every owner of land, to sell it himself. Some of this land has already been sold by the plaintiff. For more than nine years, the defendants have abandoned any effort to comply with this part of the contract.

2. CONTRACTS: rescission: laches of brokers.

It is true that, in a general way, the defendants say they have tried to sell the land, and found no market for it; but it is apparent that, for at least a year after the making of the contract, the market was good. There is no showing that the market has not been fairly good during some portions of the time between the making of the contract and the bringing of this action.

It would seem to be defendants' claim that, under this contract, giving them the exclusive right to sell, they could hold the plaintiff up indefinitely, and compel him to carry the land and pay the taxes without any return (for the land is not productive) until such time as defendants were satisfied that a sale could be made at a substantial profit to them. It seems to be their claim that, until a time arrived when the land could be sold at a profit over the investment, they had a right to neglect or refuse to make any effort to sell, and the plaintiff is without remedy. Defendants' claim is that, after the making of this contract, there was no market for this land; that they did not sell it because they

could not sell it for a profit; and that plaintiff cannot reimburse himself for the outlay, even at a sacrifice of some of his investment. The record discloses that, when defendants approached plaintiff, and asked him to make this investment, and told him that they had an option in this land, which they could not carry for want of funds, they said that it could be readily and quickly sold at a profit. This was an inducement held out to plaintiff to make the contract. For a year at least, the market was good. Many acres of similar land were sold, and yet these defendants did nothing. The transaction had already yielded them a profit of over $2,000. We are satisfied that this explains their apathy in the matter. Defendants dissolved partnership. One of the defendants went to a foreign state, and engaged in business in no way related to the matter of this contract. The other, remaining, in a feeble way claims to have made some effort. The record shows that no substantial effort was made by either of the defendants to sell this land.

The contract, when fairly interpreted, amounts to this: Defendants had an option on this land. They were unable to avail themselves of it. They came to the plaintiff, and solicited him to take the land at the option price, and told him that they would procure contracts running to him at the net price to the owners; that it was a profitable investment; that the land could be readily resold; that, if he would give them the exclusive right to sell it, they would resell it for him; and that, if they succeeded in selling it for a profit, he should have one third of the profit, after being reimbursed for his investment. They procured the contracts from the purchasers, running to the plaintiff, at $1.00 an acre more than the option called for. The plaintiff, in ignorance of the option contract, paid to the owners $1.00 more per acre than the owners were asking for the land. This extra dollar was returned to these defendants, and

was received and retained by them. For more than nine years, this contract has stood, and the defendants have done nothing, practically, in the way of efforts to sell the land. They have had more than a reasonable time in which to sell it. The partnership in the name of which the con- tract was drawn has been dissolved. One of the partners has gone to a foreign state; has abandoned every effort to resell the land. The other partner, though remaining in the state, has never procured a purchaser for this land, during all this time, nor do we think the record shows that he has ever made any substantial effort to procure a purchaser. Equity will not hold the contract longer in force, because of the laches of these defendants. Plaintiff is entitled to be relieved from the burden of it, and we think the court rightly so held.

As to the right of the plaintiff to recover back the $1.00 an acre, paid to the owners and paid back to these de- fendants, we have to say that the defendants have pleaded the statute of limitations. Though the ac-

3. LIMITATION OF ACTIONS: com- putation of period: misrep- resentations as to option price.

tion originally is in equity, this clearly is a claim based on tort, and is not heretofore cognizable in equity. The statute has run against the claim, and we think the court erred in allowing this claim against the defendants. To this extent, the decree of the district court is modified; other- wise, affirmed.—*Modified and affirmed.*

LADD, C. J., WEAVER and STEVENS, JJ., concur.